LATHAM & WATKINS LLP
Joseph R. Wetzel (SBN 238008)
Andrew M. Gass (SBN 259694)
Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600
Email: *Joe.Wetzel@lw.com*
*Andrew.Gass@lw.com*
*Britt.Lovejoy@lw.com*

LATHAM & WATKINS LLP
Samir Deger-Sen (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.906.1200
Email: *Samir.Deger-Sen@lw.com*

*Attorneys for Defendant Meta Platforms, Inc.*

William J. Edelman (SBN 285177)
Heather M. Lopez (SBN 354022)
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (866) 252-0878
wedelman@milberg.com
hlopez@milberg.com

*Counsel for Plaintiffs Matt Fisher, et al. and the Proposed Class*
[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| MATT FISHER, DEVIN YOUNGBLOOD, NICOLE CHMURA, and CHRIS RICE, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 4:25-cv-10931-JST<br><br>**SUPPLEMENTAL BRIEF**<br><br>The Honorable Jon S. Tigar |

On October 30, 2026, the Court ordered supplemental briefing to "address[] the recent cases identified by Plaintiffs" and "whether the voluntary dismissal of two Plaintiffs has any impact on the pending motion to dismiss." Dkt. 58 at 2. The parties agree that the voluntary dismissal of two Plaintiffs has no impact on the pending motion to dismiss, but Defendant Meta Platforms, Inc. ("Meta") reserves all rights to argue about the effects of voluntary dismissal should this case make it past the motion to dismiss stage, given that the dismissal will have an impact on the scope of discovery, class certification, and other matters.

**Meta's Statement**

Congress considered and rejected proposals that would have resulted in a law that does what Plaintiffs' non-binding, supplemental authority endorses. That authority misinterprets Section 1201(a)'s text and collapses Congress's intentional distinction between access and copy controls. It holds that, as long as a user encounters a technological measure before accessing content, that measure effectively controls access—regardless of its design and function. *See* Dkt. 47-1 at 37–40; Dkt. 49-1 at 10; Dkt. 49-2 at 11; Dkt. 54-1 at 9–10; Dkt. 55-1 at 7. And it yields a rule Congress never enacted and could not have anticipated: that an online platform's routine content-delivery mechanisms and anti-downloading measures—neither of which gates access to the platform's content or otherwise discriminates between who can and cannot view the content—nevertheless constitute "technological measure[s] that effectively control[] access to a work" under Section 1201(a). Under that logic, a library's walk-through theft-detection scanner controls access because an individual must encounter it to enter the library, even though it does not block anyone from entering or otherwise "select[]" between who can read books once inside. *WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th Cong. 49 (1997) (testimony of Register of Copyrights). Rather, like YouTube's technological measures, it runs in the background and is triggered only by certain conduct (i.e., removing books from the library); that is, its function is something other than blocking access to the books. This Court should not follow these wrongly decided cases.

Section 1201 establishes an asymmetrical regime that bans the circumvention of certain access controls, but not copy controls. Dkt. 33 at 3–6. This distinction was intentional. In Section

1201(a), Congress sought to provide legal fortification for technological measures that effectively control an individual's ability "to gain access to" a copyrighted work, irrespective of what someone does with the work after obtaining access. 17 U.S.C. § 1201(a)(3)(B). Section 1201(b), in contrast, "reinforce[s] copyright owners' traditional exclusive rights under § 106." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 945 (9th Cir. 2010). Congress refused to ban the circumvention of any copy controls, despite the urging of legacy media groups, because that circumvention is already governed by the Copyright Act, and any additional prohibition would chill activity the fair-use doctrine expressly authorizes. 17 U.S.C. § 1201(b)(2)(B); *see* Dkt. 33 at 6–8. Indeed, Section 1201 expressly provides that "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c).

An access control is thus one that is "*designed to* prevent access to a work"—whose function is to make the work unavailable unless one takes the required steps that, when completed, unlock access. *MDY*, 629 F.3d at 944 (emphasis added) (citation omitted). And an entity is liable under Section 1201(a) if they circumvented such a measure to "gain access" to the work. 17 U.S.C. § 1201(a)(3)(B). As alleged by Plaintiffs, YouTube's technological measures do not prevent anyone from viewing videos on the platform. Instead, they require members of the public "to view content solely through YouTube's service" to prevent them from "*us[ing] the content* independently of the service," such as by "scraping" or "downloading." Dkt. 37 at 16 (emphasis added). Put differently, Plaintiffs allege that the technological measures were designed to prevent unauthorized "use," that Meta circumvented these measures by downloading (not viewing) YouTube videos, and that their copyright-created interests have been impaired by Meta's use of their works.[1] Dkt. 33 at 13–16; Dkt. 39 at 2–4. This is a classic copyright infringement claim that

---

[1] Of the *Ted* cases, only *ByteDance* addressed standing. There, the court concluded that plaintiffs' "lost per-view advertising revenue" was an Article III injury. Dkt. 54-1 at 5. Here, Plaintiffs abandoned this theory, grounding their standing solely in copyright injuries. Dkt. 39 at 2. In any case, the lost per-view theory is implausible and undermined by the allegation that Meta "must download," not watch, videos to train its AI, Dkt. 33 at 12, which *ByteDance* did not address.

As for statutory standing, the court rejected ByteDance's argument that Section 1201 runs only to "the owner of the circumvented measure." Dkt. 54-1 at 6–7. Meta does not dispute this. Instead, it argues that Plaintiffs' alleged copyright injuries fall outside of Section 1201(a)'s zone of interests because Meta is not alleged to have bypassed any measure to *view* any video. Dkt. 33 at 14–16; Dkt. 39 at 3–4. *ByteDance* does not address this argument.

should have been brought under the Copyright Act—not the DMCA.

In concluding otherwise, Plaintiffs' authorities misinterpret the statutory text and relevant precedent. They conclude that, taking as true Plaintiffs' allegation that YouTube's technical measures "restrict" streaming to "YouTube['s] streaming architecture," Plaintiffs have plausibly alleged, at this early stage of the proceedings, that these measures effectively control access to their copyrighted works. Dkt. 49-1 at 14; *see* Dkt. 55-1 at 5–6. But the operative question is whether a technical measure controls a user's ability to "gain access to the work." 17 U.S.C. § 1201(a)(3)(B). To "gain access" is "to get the right to see." Dkt. 39 at 5 (citation omitted).

As the Ninth Circuit has explained, an access control thus functions to distinguish between individuals with authorization who can "watch or listen to a work," and those "without authorization" who cannot. *MDY*, 629 F.3d at 945. Take Westlaw. Members of the public cannot read headnotes on Westlaw, absent valid credentials. That is simply not how YouTube or its technological measures function: As Plaintiffs allege, every member of the public can watch their videos on YouTube for free, without procuring a specific tool to decrypt or descramble the videos, without obtaining a password, and without circumventing any other technical measure. Dkt. 33 at 20; Dkt. 39 at 4.

Plaintiffs' authorities misinterpret *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017). There, VidAngel purchased encrypted DVDs and used software to remove the encryption to make copies of the work. *Id.* at 853–54. The encryption was a copy control insofar as it prevented copying of the work on the DVD. But the encryption was also an access control because it locked the work itself, such that no one, purchaser or otherwise, could view the DVD's content without affirmatively obtaining and using a DVD player with the necessary decryption software. *See id.* at 863–64. Relying on *Snap*, Plaintiffs suggest that under *VidAngel*, what a defendant allegedly does to circumvent a technological measure is "irrelevant" when a measure is both an access control and a copy control; that is, any circumvention of the technological measure necessarily circumvents both an access and copy control. Dkt. 49-1 at 14. Not so. Take the encryption in *VidAngel*: An individual can circumvent its access control component without circumventing its copy control component, such as by decrypting the DVD to watch it absent an

authorized DVD player, without downloading the DVD's content. Or take a password-protected PDF with a separate restriction on copying the PDF's text: An individual with the PDF's password can view the PDF's content without circumventing the access control, but copying the text would still circumvent the copy control. Plaintiffs' suggestion, relying on *Apple*, that "[c]licking an authorized link to view a YouTube video is like inserting a DVD into an authorized DVD-player" is also wrong. Dkt. 55-1 at 8–9. As explained, unlike in the DVD scenario where the default for members of the public is lack of access to the DVD's content, YouTube's streaming architecture is the default that all members of the public automatically have access to. And Plaintiffs do not even allege that Meta viewed (accessed) their videos outside this streaming architecture, or otherwise viewed them via unauthorized means. In short, Plaintiffs have alleged neither that the technological measures gate access, nor that Meta circumvented this gate on access to view the videos in question. To the contrary, the gravamen of their complaint is that Meta copied or used videos to which it otherwise had free access.

Plaintiffs' cases further conclude that "background authentication and authorization processes" can be access controls. Dkt. 49-1 at 10–11; *see* Dkt. 54-1 at 9–10; Dkt. 55-1 at 6–9. This conclusion, too, finds no support in the statutory text. A technological measure must, "in the ordinary course of its operations, require[] the application of information, or a process or a treatment … to gain access to the work" to be an access control. 17 U.S.C. § 1201(a)(3)(B). The Copyright Office has explained that "a user" must affirmatively apply or initiate the "application of information, or a process or a treatment," such as "provid[ing] a password, API key, or some other credential." Register of Copyrights, *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention, Recommendation of the Register of Copyrights* at 122–23 (2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf. A technological measure gates access to a work when a user who performs the requisite affirmative action can gain access to the work, and a user who does not cannot. YouTube's technological measures do not require any affirmative action to gain access to the works on YouTube. Instead, they require that users "*refrain* from [certain] conduct," namely, downloading. Dkt. 39 at 9 (citation omitted) (emphasis added).

If a website's routine, automated, and invisible background processes can turn a website's content delivery system into an access control, as Plaintiffs' authorities conclude, every publicly available image and video on the internet would become an access-controlled work under Section 1201. A journalist who preserves a copy of public footage of civil rights violations breaks federal law. So too does a parent who downloads a public video of their child being bullied so they can report it to the school. As does a climate scientist who saves public videos of floods, wildfires, and other natural events to reconstruct how disasters unfold. Fair use—which Congress expressly protected, 17 U.S.C. § 1201(c)(1)—does not help, nor does any other defense Congress enacted for an infringement claim. *See* Dkt. 33 at 23–24. There is nothing different about accessing freely available videos on YouTube for these same purposes.[2]

Meta does not argue that there is *no* recourse for unauthorized copying. Copyright owners can address unlawful copying by suing for copyright infringement as Congress intended. Dkt. 33 at 23–25; Dkt. 39 at 9–10. But Section 1201(a) is directed at a fundamentally different problem: Congress's "concern[] with encouraging copyright owners to make their works available in digital formats such as 'on-demand' or 'pay-per-view.'" *MDY*, 629 F.3d at 947. Section 1201(a) imposes penalties on those who circumvent technologies that limit access—such as those who access "on-demand" or "pay-per-view" platforms without paying—because such unauthorized access would not otherwise be subject to copyright remedies. And Section 1203 requires that the harm suffered by Plaintiffs fall within that particular zone of interests.

But Plaintiffs have now effectively persuaded courts to let them bring copyright claims under the DMCA, without satisfying any of the Copyright Act's requirements, such as registration, proof of ownership of a copyright, or defeating its affirmative defenses, such as fair use. *See* Dkt. 33 at 23–25. Congress expressly rejected legislative proposals to extend the DMCA to bypassing digital technologies that prevent people from making various uses of content otherwise available to everyone in the world. *See* Dkt. 33 at 24–25. This limitless rule, adopted by Plaintiffs' supplemental authority, effectively eliminates fair use and creates liability for ordinary internet

---

[2] Meta does not dispute that private or paywalled videos might be different, but such videos are not at issue here.

activity.

This Court should apply the text that Congress wrote, where only measures that gate off access to a work and unauthorized access trigger Section 1201(a). Since no amount of discovery will change the fact that Plaintiffs' works are publicly accessible and that Meta allegedly copied the works without viewing them, the Court should GRANT Meta's motion to dismiss.

**Plaintiffs' Statement**

Plaintiffs Matt Fisher, Nicole Chmura, Devin Youngblood, and Chris Rice (collectively, "Plaintiffs") submit this supplemental briefing on Meta's Motion to Dismiss (ECF No. 33) (the "Motion") and Reply (ECF No. 39) (the "Reply"), addressing: (1) the cases Plaintiffs submitted to the Court for consideration in their Statements of Recent Decision: ECF No. 47 (attaching *Reddit, Inc. v. SerpApi LLC*, 840 F. Supp. 3d 308 (S.D.N.Y. 2026) ("*Reddit*")); ECF No. 49 (attaching *Ted Ent., Inc. v. Snap, Inc.*, 2026 WL 2435349 (C.D. Cal. Aug. 19, 2026) ("*Snap*"), and *UMG Recordings, Inc. v. Suno, Inc.*, 2026 WL 2410184 (D. Mass. Aug. 18, 2026) ("*UMG*")); ECF No. 54 (attaching *Ted Ent., Inc. v. ByteDance Inc.*, 2026 WL 2970541 (N.D. Cal. Oct. 2, 2026) ("*ByteDance*")); ECF No. 55 (attaching *Ted Ent., Inc. v. Apple, Inc.*, ECF No. 61 (N.D. Cal. Oct. 9, 2026) ("*Apple*")) and (2) another recent decision not included in their previously submitted Statements of Recent Decision: *Ace Cam, Inc. v. Runway AI, Inc.*, 2026 WL 3268747 (S.D.N.Y. Oct. 30, 2026) ("*Runway*").

Seven decisions by six judges in four Districts have sustained claims under Section 1201(a) of the Digital Millennium Copyright Act ("DMCA") that AI companies circumvented YouTube's technological protection measures ("TPMs") or comparable bot-detection measures. Four of them—*Apple*, *ByteDance*, *Snap*, and *Runway*—are materially similar to this case. Every one has rejected the core arguments of Meta's Motion. Despite this weight of authority, Meta waves aside the decisions and doubles down on arguments that have been repeatedly rejected.

## I. META'S ARGUMENTS HAVE BEEN SOUNDLY REJECTED

### A. Meta Argues That the TPMs Are Mere Copy Controls and the Claim Is an "End-Run" Around the Copyright Act (Motion at 17–25; Reply at 1, 4, 7–10).

Meta's supplement rehashes its arguments that the TPMs serve "a single function: to prevent

downloading," Motion at 18–20; Reply at 8; that "controlling access to a 'file' is not the same as controlling access to a 'work,'" Motion at 21; that classification is a "legal question," Reply at 7; and that the claim is an "end-run" of Copyright law. *Id.* at 1; *see also* Motion at 23–25.

The courts have rejected each premise. A TPM may be both an access control and a use control, so it is "irrelevant" that YouTube's TPMs also restrict downloading. *Snap*, 2026 WL 2435349, at *5–7; *Runway*, 2026 WL 3268747, at *2. And classification of whether a TPM is an "access" or "use" control cannot be resolved on the pleadings. *Snap*, 2026 WL 2435349, at *4–7.

Meta's supplement asserts that these courts deemed any measure a user "encounters" an access control "regardless of its design and function." Not so. Each court examined how the TPMs, as alleged, actually function, and found that they condition delivery of the work itself. *See ByteDance*, 2026 WL 2970541, at *5; *Apple* at 8, 11. Meta also recasts a sentence from Plaintiffs' Opposition (ECF No. 37) that the TPMs require users "to view content solely through YouTube's services" so that they cannot "us[e] the content independently of the service," as a concession that the TPMs govern only "use." But a measure that permits a work to be viewed only through an authorized delivery system is an access control. *See* Section II.B, *infra*.

Nor must an access control require an "affirmative action" by a user. The text Meta quotes defines an access control by what the *measure* requires "in the ordinary course of its operations": "the application of information, *or a process or a treatment*." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). Nothing in that language requires that the user, rather than the measure, supply the process. In any event, YouTube's TPMs satisfy even Meta's test: *Apple* held that they "clearly employ authentication processes and request information from users 'in the ordinary course of operations.'" *Apple* at 8. And *ByteDance* held that the proof-of-origin token "operates regardless of whether a user is merely viewing or also downloading a video." 2026 WL 2970541, at *5.

Meta's supplement leans heavily on a new gloss: that it downloaded, but did not "view," Plaintiffs' works and so never "gain[ed] access" to them. But the statute speaks of gaining "access to the work," 17 U.S.C. § 1201(a)(3)(B), not of viewing it. Meta's own definition, "to get the right to see," is satisfied when a defendant takes possession of the work itself. Meta's password-protected PDF example assumes that the user satisfies the password requirement, receives the

document, and then bypasses a separate restriction on copying its text. The First Amended Complaint alleges a different sequence. Meta bypassed YouTube's technological checks to obtain the videos directly from YouTube. ¶¶ 43, 48, 108.[3] As alleged, those checks condition delivery of the videos even for ordinary playback. *ByteDance*, 2026 WL 2970541, at *5. The alleged circumvention therefore occurred in obtaining the works. As *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) illustrates, making copies can be the objective of bypassing an access control, and § 1201(a) does not require the defendant to play the work after obtaining it.

As for the "end-run" argument, *Reddit* noted that *MDY* recognized "a distinct anti-circumvention right under § 1201(a) without an infringement nexus requirement." 840 F. Supp. 3d at 346 (quoting 629 F.3d at 952). Meta's now-jettisoned lone authority, *Hattler* (Motion at 21, 25), "is not persuasive because it predates" *VidAngel*. *ByteDance*, 2026 WL 2970541, at *6. Meta's complaint that Plaintiffs thereby avoid the Copyright Act's registration and ownership requirements and sidestep fair use is simply its own description of the "distinct" right Congress created. *Reddit*, 840 F. Supp. 3d at 346.

**B. Meta Argues That Freely Viewable Videos Cannot Be Protected by an Access Control (Motion at 17–20; Reply at 4–6).**

Meta similarly rehashes its belief that YouTube is "the paradigmatic platform where copyrighted works are accessible without circumventing access controls." Motion at 20. Because anyone can watch, Meta says, no "application of information, or a process or a treatment" is needed "to gain access to the work," Reply at 4; access is "a binary"; and under *Lexmark*[4] and *MDY*[5] a measure that leaves another route open is not an access control. Reply at 5–6.

Every court to consider these points, assessing the very same TPMs at issue here, has rejected them. *Apple* held the argument "defies logic and Ninth Circuit precedent." *Apple* at 6. *Snap* held that public access "does not establish that the works are technologically unrestricted." 2026 WL 2435349, at *5–6. In *ByteDance* "the Court [was] not persuaded" by this argument and held that

---

[3] All citations to "¶" refer to Plaintiffs' First Amended Complaint, ECF No. 31.

[4] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

[5] *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010).

creators authorized TPMs that "control the viewing of their videos on YouTube in the first instance." 2026 WL 2970541, at *5. *Runway* held that public viewing "necessarily is subject to YouTube's TPMs." 2026 WL 3268747, at *3. *Reddit* rejected the same premise, noting the propriety of plaintiff's statement that if it were otherwise "no service could protect a copyrighted book, movie, or song" available elsewhere. 840 F. Supp. 3d at 342 n.18. Meta's other analogies do not help it. A library's theft scanner, which patrons simply walk past and which "does not block anyone from entering," is the opposite of what is alleged here: measures that must be satisfied before the work is delivered to anyone at all. *See ByteDance*, 2026 WL 2970541, at *5; *Apple* at 11. A patron can read the book before the scanner ever operates, whereas YouTube's alleged authentication checks must be satisfied before the platform delivers the video. And Meta's Westlaw example shows only that a password is *one* kind of access control.

And that is why a number of these cases relied on *VidAngel*, because the core teaching of *VidAngel* is that an access control is not defeated "simply because there are authorized ways to access" the work. 869 F.3d at 865. As *Apple* put it, "[c]licking an authorized link to view a YouTube video is like inserting a DVD into an authorized DVD-player." *Apple* at 8–9; on Meta's logic, disc encryption would "cease to be an access control" if studios gave away licensed players. *UMG*, 2026 WL 2410184, at *5–6. Meta's attempt to distinguish *VidAngel* confirms the point. Meta concedes that the DVD encryption was an access control because "no one, purchaser or otherwise, could view the DVD's content without affirmatively obtaining and using a DVD player with the necessary decryption software." That encryption did not discriminate among *viewers*; anyone with an authorized player could watch. It discriminated between authorized and unauthorized *means* of reaching the work. YouTube's TPMs, as alleged, do the same thing. The "binary" and *Lexmark* theories fare no better. *Lexmark* applies "only when there is some other means of accessing the copyrighted work," and there is "no suggestion" of one here. *UMG*, 2026 WL 2410184, at *5–6. Again, the Amended Complaint alleges that YouTube does not provide the work "in [its] native or fixed form," that the work "cannot be accessed by the public absent a means of bypassing and circumventing these specific controls," and that Meta obtained the files by downloading each "directly from YouTube" (¶¶ 43, 48, 108). *See also Runway*, 2026 WL 3268747,

at *3 (crediting allegation that YouTube "only delivers audiovisual works through a controlled streaming architecture").

### C. Meta Argues That Plaintiffs Lack Article III and Statutory Standing (Motion at 12–16; Reply at 2–4).

Meta argues that Plaintiffs abandoned their lost-advertising-revenue theory and that Meta's downloading of videos for AI training would not have generated views. Plaintiffs expressly preserved that theory in their Opposition, which explained that their injury "is not limited to lost revenue from views" and also includes the loss of compensation for their revenue-generating works. Opposition at 12; see ¶¶ 18–24, 144–50. *ByteDance* held that, on materially similar allegations, lost per-view advertising revenue was a pocketbook injury fairly traceable to the alleged circumvention. 2026 WL 2970541, at *3. As to statutory standing, Meta does not dispute that Plaintiffs need not own YouTube's TPMs. It instead argues that Plaintiffs fall outside the statute's zone of interests because Meta downloaded the videos without viewing them. *ByteDance* held that owners of works protected by the allegedly circumvented measures are "at the very heart" of § 1203's zone of interests. 2026 WL 2970541, at *5. Plaintiffs allege that they authorized YouTube to protect their works and that Meta bypassed those protections to obtain the videos. ¶¶ 9, 43, 48, 108; *see Runway*, 2026 WL 3268747, at *4. Meta's argument turns on whether obtaining the videos by bypassing those measures constitutes access. As explained in Section II.A, it does.

### D. Meta's Policy Arguments Are Red Herrings.

Meta's policy arguments cannot displace the text Congress enacted, which every court to address these TPMs has applied. Meta speculates that "every publicly available image and video on the internet would become an access-controlled work." Its hypotheticals bear no resemblance to the conduct alleged here: Meta's deliberate bypass of five separate TPMs to obtain creators' works for AI training at scale. Congress anticipated concerns about adverse effects on non-infringing uses and created a triennial rulemaking process to address them. 17 U.S.C. § 1201(a)(1)(C). Indeed, the Copyright Office recommendation Meta relies on is itself a product of that process. *See* U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding* (Oct. 2024). As the Supreme Court has noted, while "reasonable people can disagree with how Congress balanced the various social costs and benefits in this [legislative] area[,]" the role of the Court is

"to apply, not amend the work of the People's representatives." *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 90 (2017).

For these reasons Meta's Motion should be DENIED.

Dated: November 19, 2026

By */s/ Joseph R. Wetzel*
Joseph R. Wetzel (SBN 238008)
*Joe.Wetzel@lw.com*
Andrew M. Gass (SBN 259694)
*Andrew.Gass@lw.com*
Brittany N. Lovejoy (SBN 286813)
*Britt.Lovejoy@lw.com*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

Samir Deger-Sen (*pro hac vice*)
*Samir.Deger-Sen@lw.com*
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.906.1200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

*/s/ William J. Edelman*
William J. Edelman (SBN 285177)
Heather M. Lopez (SBN 354022)
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (866) 252-0878
wedelman@milberg.com
hlopez@milberg.com

Jarrett Lee Ellzey (pro hac vice)
Tom Kherkher (pro hac vice)
**ELLZEY KHERKHER SANFORD MONTGOMERY LLP**
4200 Montrose Street, Suite 200
Houston, TX 77006
Tel: (713) 244-6363
JEllzey@EKSM.com
TKherkher@EKSM.com

Rom Bar-Nissim (SBN 293356)
**HEAH BAR-NISSIM LLP**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

Tel: (310) 432-2836
Rom@HeahBarNissim.com

James E. Cecchi (pro hac vice)
Kevin G. Cooper (pro hac vice)
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Attorneys for Plaintiffs and the Proposed Class*

## SIGNATURE ATTESTATION

I, Joseph R. Wetzel, am the ECF user whose ID and password are being used to file this Supplemental Brief. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from all above signatories to the stipulation.

Dated: November 19, 2026 *<u>/s/ Joseph R. Wetzel</u>*